# EXHIBIT F

1  GEORGE S. CARDONA
   Acting United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Division
   WESLEY L. HSU (Cal. Bar No. 188015)
4  Assistant United States Attorneys
   Chief, Cyber and Intellectual
5  Property Crimes Section
        1200 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-3045
        Facsimile: (213) 894-8601
8       e-mail:    wesley.hsu@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
10

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13
   UNITED STATES OF AMERICA,    )  No. CR 09-1215-R
14                              )
              Plaintiff,        )  GOVERNMENT'S POSITION RE:
15                              )  SENTENCING; EXHIBITS
              v.                )
16                              )  Sent. Date:   March 8, 2010
   MICHAEL DAVID BARRETT,       )  Time:         1:30 p.m.
17     aka "Mark Bennett,"      )  Ctrm:         8
       aka "handsfouryou,"      )
18     aka "GOBLAZERS1,"        )  Hon. Manuel L. Real
                                )
19            Defendant.        )
   _____)
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  THE GOVERNMENT CONCURS IN THE ADVISORY GUIDELINES CALCULATIONS SET FORTH IN DEFENDANT'S PSR.. . . . . . . 2

    B.  A SENTENCE OF 27 MONTHS IMPRISONMENT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO PUNISH DEFENDANT FOR HIS CONDUCT.. . . . . . . . . . . . . . . . . . . . . 2

        1.  <u>18 U.S.C. § 3553(a)(1)</u>.. . . . . . . . . . . . . . 3

        2.  <u>18 U.S.C. § 3553(a)(2)</u>.. . . . . . . . . . . . . . 7

        3.  <u>THE REMAINING 3553(a) FACTORS ALSO SUPPORT THE SENTENCE REQUESTED BY THE GOVERNMENT</u>.. . . . . . . 9

III. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                      Page(s)

United States v. Battista,
    575 F.3d 226 (2d Cir. 2009). . . . . . . . . . . . . . . . . 11, 12

United States v. Gonzalez,
    541 F.3d 1250 (11th Cir. 2008) . . . . . . . . . . . . . . . . . 4

United States v. Gordon,
    393 F.3d 1044 (9th Cir. 2004). . . . . . . . . . . . . . . . . . 11

United States v. Moon,
    513 F.3d 527 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . 4

United States v. Novak,
    476 F.3d 1041 (9th Cir. 2007). . . . . . . . . . . . . . . . . . 10

United States v. Treadwell,
    ___ F.3d ___, 2010 WL 309027 (9th Cir. Jan. 28, 2010). . . . 9

**FEDERAL STATUTES**

18 U.S.C. § 1801. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 2264(b)(1). . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 2264(b)(3). . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 2264(b)(4). . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 2264(c). . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3143(b)(2). . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3553(a)(1). . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3553(a)(2). . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3553(a)(3). . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3553(a)(4). . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3553(a)(6). . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3553(a)(7). . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3663A(a)(2). . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 3663A(b)(4). . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 3663A(c)(1)(B). . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES** (cont'd)

| STATE STATUTES | Page(s) |
|---|---|
| 720 Ill. Comp. Stat. 5/26-4 | 9 |
| Ohio Rev. Code Ann. § 2907.08 | 8 |
| Tenn. Code Ann. § 39-13-605 | 8 |
| Wis. Stat. § 942.08 | 8 |

# I.

# INTRODUCTION

Between January and September 2008, defendant Michael David Barrett ("defendant") stalked ESPN sideline reporter Erin Andrews ("Victim Andrews") to at least three different hotel rooms in three states. Defendant violated Victim Andrews' privacy by removing the peephole device from her hotel room door without her knowledge and watching her through the peephole while she was in her room. Defendant used his cellphone to capture video of her naked in her room. Defendant then, over the course of weeks in 2009, posted on the Internet ten videos of Victim Andrews naked, both identifying Victim Andrews as the woman in the videos and making them available for anyone with an Internet connection to download for years to come. Victim Andrews suffered, and continues to suffer, substantial emotional distress from defendant's unlawful conduct.

As a public figure, Victim Andrews' distress was magnified due to the fact that many thousands of persons are aware of the videos, and unknown numbers have viewed them knowing who she is. For many years, Victim Andrews is likely to come into contact with sports fans and other members of the public who are among those who have seen the videos or, at minimum, who are aware of them.

Defendant's criminal conduct toward Victim Andrews warrants significant punishment. The government respectfully requests that the Court impose a sentence of 27 months imprisonment, three years supervised release with terms and conditions as stipulated to by the parties in the plea agreement, restitution in the

amount of $334,808.27, and a special assessment of $100. The government also requests that the Court remand defendant to the custody of the Bureau of Prisons ("BOP") at the conclusion of his sentencing hearing.

## II.

## ARGUMENT

**A. THE GOVERNMENT CONCURS IN THE ADVISORY GUIDELINES CALCULATIONS SET FORTH IN DEFENDANT'S PSR**

With respect to the presentence investigation report ("PSR"), the government requests that the Court adopt its advisory Sentencing Guidelines calculation. This calculation is as follows: a base offense level of 18 (U.S.S.G. § 2A6.2(a)); +2 for a pattern of activity involving stalking, threatening, harassing or assaulting the same victim (U.S.S.G. § 2A6.2(b)(1)(D)); and -3 for acceptance of responsibility--for a total adjusted offense level of 17. The parties stipulated to this calculation in the plea agreement. (Plea Agt. ¶ 13.)

The government also respectfully submits that the PSR correctly calculated defendant's criminal history to be Category I and asks that the Court adopt that calculation. Thus, the government requests that the Court adopt an advisory Guidelines range of 24 to 30 months.

**B. A SENTENCE OF 27 MONTHS IMPRISONMENT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO PUNISH DEFENDANT FOR HIS CONDUCT**

In addition to the advisory Guidelines range, of course, the Court must consider the factors set forth under 18 U.S.C. § 3553(a). The government respectfully submits that application

2

of the facts of this case to the Section 3553(a) factors supports a sentence of 27 months in prison in this case.

1.  18 U.S.C. § 3553(a)(1)

18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of defendant. The nature and circumstances of the offense are, to borrow the words of the United States Magistrate Judge in Chicago who initially set defendant's bail, "very horrific." See http://sports.espn.go.com/espn/news/story?id=4534293 (true and correct copy attached as Ex. 1.)

Over the course of nine months, the defendant tracked Victim Andrews across the country on at least three separate occasions. (PSR ¶¶ 11-18.) He called a number of different hotels to locate where she would be staying. (PSR ¶¶ 11, 15.) He deliberately requested a room next door to her. (PSR ¶ 17.) While she was in the privacy of her hotel rooms preparing for work by showering, blow-drying her hair, and getting dressed, defendant invaded Victim Andrews' privacy in a serious manner, removing the peephole device from her hotel room doors so that he could take digital videos of her naked. (PSR ¶¶ 13, 16, 18.)

Then, over the course of weeks in 2009, he posted the videos for the public to download, naming the first video "Erin Andrews Naked Butt," and other videos "Sexy and Hot Blonde Sports celebrity shows us her all," "Erin Andrews in a Pink Thong," "Erin go WOW!!," "Erin Andrews," "Erin Andrews Spectacular Butt," and "Erin Andrews Awesome." (Ex. 2 (list of videos posted and named by defendant on DailyMotion.com between February 17 and

3

1  June 19, 2009); PSR ¶¶ 21-22.) Defendant had attempted to sell
2  the videos to TMZ.com[1] (PSR ¶ 19), so he knew there would be
3  significant public interest in downloading the videos. In July
4  2009, the videos reached the top of Google's "most searched
5  items" list, so it is reasonable to infer that the videos were
6  widely downloaded. See
7  http://www.youtube.com/watch?v=ebwP5LTOe8o (Good Morning America
8  news report noting that the videos rose to the "top" of Google's
9  search list) (a true and correct copy on CD-ROM attached as Ex.
10 3.) The videos simply cannot be removed from the Internet, so no
11 doubt downloads continue to this day.
12      The emotional distress caused to Victim Andrews is a
13 necessary part of the evaluation of the nature and circumstances
14 of defendant's offense. See, e.g., United States v. Moon, 513
15 F.3d 527, 534 (6th Cir. 2008) (affirming sentence where district
16 court permitted testimony of relatives of deceased patients as
17 relevant to nature and circumstances of the fraud offense).[2]
18 Defendant, of course, has admitted that he intended to cause
19 Victim Andrews substantial emotional distress and that he in fact
20 did cause her substantial emotional distress. Nevertheless, as
21 her statement to the Court at defendant's guilty plea and her
22 Victim Impact Statement both make clear, defendant's conduct has

---

[1] TMZ.com is a website dedicated to celebrity news.

[2] Some courts have considered harm to the victim under Section 3553(a)(2) as well. See, e.g., United States v. Gonzalez, 541 F.3d 1250, 1254 (11th Cir. 2008) (noting district court's consideration of "desperation of the victims" when considering the nature and circumstances of offense and harm to victims when considering the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment).

4

had a devastating impact on Victim Andrews' emotional state, and the emotional distress caused to her and her family cannot be overstated.  She has lived in fear for her physical safety.  (Victim Impact Statement at 1.)  She has nightmares about defendant.  (Id.)  She also wakes up at least once a night fearing that defendant is breaking into her home.  (Id.)  Every time she turns on a computer, Victim Andrews is reminded that the videos cannot be removed from the Internet (id.), and she knows that her future husband and her future children will have to confront these videos (id. at 2).  Whenever she goes to work, she must deal both with worries that she is not being taken seriously and with "fans" that say things about the videos to her.  (Id. at 1.)  Also disturbing is the fact that many people, including some of Victim Andrews' peers in the media, wrongly believed that Victim Andrews had something to do with these videos, i.e., that she orchestrated them to boost her career.  (Id. at 2.)  Victim Andrews' father has also suffered significant emotional distress, with his daughter calling in tears and being "ravaged on the Internet."  (Id. at 3.)  Taken together, the nature and circumstances of defendant's conduct require significant punishment.

    Defendant's history and characteristics also support a sentence of 27 months imprisonment.  It is true that defendant's criminal history does not result in any criminal history points.  (PSR ¶¶ 42-47.)  It is also true that defendant has a history of stable employment.  (PSR ¶¶ 64-65.)  However, defendant's conduct toward Victim Andrews cannot be viewed as an "isolated" or "aberrant" act in an otherwise law-abiding life.

To the contrary, Victim Andrews was only one of defendant's many victims. After initially posting one of the videos of Victim Andrews to Google on February 12, 2009, defendant posted ten videos of Victim Andrews to DailyMotion.com under his username "GOBLAZERS1" between February 16 and March 11, 2009. (PSR ¶¶ 21-22.) Between February 16 and June 19, 2009, defendant also used the GOBLAZERS1 account at DailyMotion.com to post 32 other "hotel peephole" videos. (See Ex. 2; Gov't Under Seal Ex. A (CD with copies of all videos received by the government from DailyMotion.com).)[3] Review of these other videos demonstrates that defendant victimized approximately 16 other women in almost precisely the same way that he victimized Victim Andrews. (Gov't Under Seal Ex. A). Thus, defendant's video scheme spanned at least 18 months, and involved over a dozen victims. (PSR ¶ 10.) Also, as he did with Victim Andrews (PSR ¶ 14), defendant ran "People Searches" (a type of Internet background check that can produce information such as date of birth and home address) on more than 30 other women between November 25, 2006, and July 2, 2009. (See Gov't Under Seal Ex. B.)[4] These women included other female sports reporters, as well as other television personalities. (See id. at 18, 51, 54-55.)[5] Thus, defendant's criminal conduct toward Victim Andrews was neither aberrant or

---

[3] The government is concurrently filing exhibits A and B under seal.

[4] It is worth noting that, in contrast, the only man that defendant ran a "People Search" on was himself.

[5] Based on the government's review of the videos, the government does not believe that celebrities other than Victim Andrews are portrayed in the other 32 videos posted by defendant.

6

isolated. Instead, it was a part of a long-term obsession and scheme involving Victim Andrews, as well as a significant number of other women.

For all of these foregoing reasons, this Section 3553(a)(1) factor strongly supports the imposition of a sentence of 27 months imprisonment.

2. <u>18 U.S.C. § 3553(a)(2)</u>

18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of defendant, and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. This factor also supports the government's request for a sentence of 27 months imprisonment because of the seriousness of the offense, the need to deter further criminal conduct by the defendant, and the need to promote respect for the law.

As discussed above, defendant's offense is serious. Defendant's punishment in this case must not only serve as a deterrent to him, but as a deterrent to other would-be video voyeurs who would post their videos on the Internet. The confluence of the widespread use of cellphone cameras, the popularity of reality television, and the availability of the Internet have combined to make video voyeurism a serious problem today. "The problem of voyeurism has become even more exacerbated since the introduction of cell phones equipped with digital cameras . . . . These portable devices enable a Peeping

7

1  Tom to secretly snap photographs of anyone at any time without
2  notice, and easily upload these photographs to the Internet for
3  anyone to view." Josh Blackman, Note, <u>Omniveillance, Google,</u>
4  <u>Privacy in Public, and the Right to Your Digital Identity: A Tort</u>
5  <u>For Recording and Disseminating an Individual's Image Over the</u>
6  <u>Internet</u>, 49 Santa Clara L. Rev. 313, 360 (2009) (internal
7  citation omitted) (true and correct copy attached as Ex. 4.) The
8  combination of video voyeurism and the Internet poses an ever-
9  growing and substantial danger to the right to privacy.
10         This danger has been noticed by legislatures across the
11 country. In passing the Video Voyeurism Prevention Act of 2004,
12 18 U.S.C. § 1801, Congress recognized the substantial harm of
13 video voyeurism combined with the Internet:

>     In passing the Video Voyeurism Prevention Act of 2004,
>     Congress addressed its concern with the Internet's
>     ability to easily and instantly disseminate voyeuristic
>     photographs to a global audience. The House Reports
>     noted that violations of privacy are "compounded when
>     the photographs find their way to the Internet . . .
>     [and] the instantaneous distribution capabilities of
>     the Internet, have combined to create a threat to . . .
>     privacy." The Congressional Record reported that "the
>     impact of video voyeurism on its victims is greatly
>     exacerbated by the Internet. As a result of Internet
>     technology, the photographs that a voyeur captures can
>     be disseminated to a worldwide audience in a matter of
>     seconds." Representative Jerse even commented that a
>     victim's "privacy could be violated millions of times"
>     if the image is posted on the Internet.

23 Blackman, <u>supra</u>, at 366-67. In addition to the federal
24 government, nearly all of the states have passed laws prohibiting
25 video voyeurism and/or the dissemination of such videos. <u>See</u>,
26 <u>e.g.</u>, Tenn. Code Ann. § 39-13-605 (prohibiting video voyeurism
27 and dissemination); Ohio Rev. Code Ann. § 2907.08 (Voyeurism);
28 Wis. Stat. § 942.08 (Invasion of Privacy); S.C. Code Ann. § 16-

17-470 (prohibiting recording and distribution); 720 Ill. Comp. Stat. 5/26-4 (same). Defendant's sentence should reflect the need to curb this significant problem.

In this time of diminishing personal privacy, a line must be drawn. Travelers must feel safe in the privacy of their hotel rooms, secure that they will not have embarrassing videos taken of them while showering or dressing and placed on the Internet for unlimited distribution forever. A 27-month sentence in this case would promote respect for the law and deter further criminal conduct by defendant and others.

3.  THE REMAINING 3553(a) FACTORS ALSO SUPPORT THE SENTENCE REQUESTED BY THE GOVERNMENT

18 U.S.C. § 3553(a)(3) requires the Court to consider the kinds of sentences available. There is no doubt that incarceration is appropriate given the nature of defendant's offense.

18 U.S.C. § 3553(a)(4) and (5) now require the Court to consider the Sentencing Guidelines in determining the particular sentence to be imposed. As noted above, the advisory Guidelines recommend a sentence in the range of 24 to 30 months, which the government requests here.

18 U.S.C. § 3553(a)(6) requires the Court to minimize sentencing disparity among similarly situated defendants. Sentencing within the Guideline range of 24 to 30 months is sufficient to ensure that the sentence does not create an unwarranted disparity with other defendants. See United States v. Treadwell, ___ F.3d ___, 2010 WL 309027, at *18 (9th Cir. Jan. 28, 2010) ("Because the Guidelines range was correctly

calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' between Treadwell and other offenders convicted of similar frauds."). The government is unaware of any "similarly situated" defendants.

Finally, 18 U.S.C. § 3553(a)(7) requires the Court to consider restitution. Restitution can include an order requiring defendant to liquidate retirement assets, to the extent that defendant is permitted under his plan, in order to meet restitution obligations. United States v. Novak, 476 F.3d 1041, 1053 (9th Cir. 2007) (en banc); (see PSR ¶ 67 (defendant possesses retirement assets).) Two separate restitution provisions apply here. Title 18, United States Code, Section 2264 mandates that the Court order "the full amount of the victim's losses." 18 U.S.C. § 2264(b)(1), (4). This is defined as including the following:

    (A)  medical services relating to physical, psychiatric, or psychological care;

    (B)  physical and occupational therapy or rehabilitation;

    (C)  necessary transportation, temporary housing, and child care expenses;

    (D)  lost income;

    (E)  attorneys' fees, plus any costs incurred in obtaining a civil protection order; and

    (F)  any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2264(b)(3). Under Section 2264, "victim" is defined in relevant part as the individual harmed as a result of a commission of a crime under Section 2261A. 18 U.S.C. § 2264(c).

Under the Mandatory Victims Restitution Act ("MVRA"), restitution is mandatory where "an identifiable victim or victims has suffered . . . pecuniary loss."  18 U.S.C. § 3663A(c)(1)(B).

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).  The MVRA requires that restitution "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. § 3663A(b)(4) (emphasis added).  Investigation costs in aid of the criminal proceedings, including attorneys' fees, are recoverable.  United States v. Gordon, 393 F.3d 1044, 1057 (9th Cir. 2004); see also United States v. Battista, 575 F.3d 226, 233-34 (2d Cir. 2009) (decided under "almost verbatim" language of the Victim Witness Protection Act ("VWPA")).

As set forth in the PSR and in her Victim Impact Statement, Victim Andrews seeks $335,508.27 in restitution.  The government respectfully submits that nearly all of the losses requested by Victim Andrews are recoverable under either Section 2664 or the MVRA.  Certainly, all of the losses directly incurred by Victim Andrews are recoverable under Section 2664.  ESPN's losses in assisting with the investigation are also recoverable because ESPN qualifies as a "victim" under the MVRA as Victim Andrews' employer and given that she was traveling for work when

11

victimized. See Battista, 575 F.3d at 231 ("Although [the defendant] did not defraud the NBA directly, we conclude that the district court properly characterized the NBA as a 'victim' under the VWPA because the NBA was harmed by the conduct committed during the course of the conspiracy to transmit wagering information . . . ."). The losses incurred to Victim Andrews' father for traveling with her to Los Angeles to provide support during the investigation and prosecution of this case are recoverable as her father also qualifies as a victim under the MVRA. Only the $700 airfare for Victim Andrews' mother, which was neither incurred by Victim Andrews nor directly related to the investigation or prosecution of defendant, seems to fall outside the scope of both Section 2264 and the MVRA. Thus, the government conservatively requests a restitution order of $334,808.27 (Victim Andrews' requested amount less $700).

### III.
### CONCLUSION

Defendant's criminal conduct against Victim Andrews cannot be sanctioned. A 27-month sentence is necessary to punish defendant for his violations of Victim Andrews' privacy and the resulting substantial emotional distress. The government also requests that the Court impose a three-year period of supervised release, restitution in the amount of $334,808.27, and a special assessment of $100. Finally, the government requests that defendant be remanded to the custody of the BOP at the conclusion of the sentencing hearing in this matter. See 18 U.S.C. § 3143(b)(2) ("The judicial officer shall order that a person who has been found guilty of an offense . . . and is awaiting

```
 1  imposition or execution of sentence be detained unless . . . the
 2  judicial officer finds there is a substantial likelihood that a
 3  motion for acquittal or new trial will be granted . . . and the
 4  judicial officer finds by clear and convincing evidence that the
 5  person is not likely to flee or pose a danger to any other person
 6  of the community.") (emphasis added).
 7
 8  DATE: February 8, 2010            Respectfully submitted,
 9                                    GEORGE S. CARDONA
                                      Acting United States Attorney
10
                                      CHRISTINE C. EWELL
11                                    Assistant United States Attorney
                                      Chief, Criminal Division
12
13                                          /s/
                                      ─────────────────────────
                                      WESLEY L. HSU
14                                    Assistant United States Attorney
                                      Chief, Cyber and Intellectual
15                                    Property Crimes Section
16                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
17
18
19
20
21
22
23
24
25
26
27
28
```